(No. 20303.—

CHARLES ROBINSON HOLMES, Appellee, *vs.* LUCY MARETTA MORRIS, Appellant.

*Opinion filed October 25, 1930—Rehearing denied Dec. 6, 1930.*

BRADLEY, WILLIAMS & HARPER, (SAMUEL A. HARPER, of counsel,) for appellant.

WILL J. BELL, and ORVILLE W. LEE, (KELLEY A. LOY, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellee filed a bill in the superior court of Cook county during October, 1927, to set aside two deeds to residence property known as 5616 Kenmore avenue, in the city of Chicago. The first deed was made under authority of a power of attorney executed by appellee and his wife to appellant November 8, 1918. Appellant was the mother of appellee's wife, and the first deed was made by appellant September 30, 1924, to Olive Morris, her daughter and a

sister of appellee's wife, and Olive conveyed the property on October 1, 1924, to appellee's wife. The amended and supplemental bill alleges want of consideration for both conveyances, and charges appellant with fraud in conveying the property through her daughter Olive to appellee's wife, and alleges the property was held in trust by the wife until her death, June 24, 1927, for the use and benefit of appellee. The bill alleges appellee and his wife were, on account of his engineering business, required to reside in Great Britain for years, and that during his absence from the United States he could not look after and manage the property; that he wanted to sell it if an adequate consideration could be obtained, and that he and his wife on November 8, 1918, executed a power of attorney to his mother-in-law, who resided in Chicago, authorizing her to convey the premises to any person or persons or corporation for any consideration which she might consider satisfactory, and that on September 30, 1924, without his knowledge or consent, she executed a conveyance of the property to Olive Morris, a sister of appellee's wife, and the following day Olive conveyed it to his wife; that there was no consideration for the conveyances, and they were fraudulently made for the purpose of divesting him of his title and to place the same in his wife; that the conveyances merely vested the legal title in his wife as trustee and that she had no real or beneficial interest therein; that she never at any time advanced any money toward the payment of any obligation in connection with the property, and that during the marital relation between him and his wife she had no funds or income other than as advanced to her by him or through investments by him. The bill alleges appellee's wife died in Chicago June 24, 1927, leaving as her heirs-at-law, appellee, who is her husband, appellant, who is her mother, and her sister, Olive Morris; that after his wife's death her will was filed in the probate court of Cook county, and by the will, which was executed December 11, 1914, she

devised all her real estate to her mother and nominated her as executrix. The bill alleges that neither appellant nor Olive Morris has any right in or to the premises under the will but that the title to the property was vested in appellee's wife as trustee for his use and benefit, and that he is entitled to both the legal and equitable title to the premises.

Olive Morris filed a disclaimer, and appellant filed an answer, alleging the premises in question were formerly owned by appellee's father, who executed to appellee a quitclaim deed therefor in December, 1916, which deed was delivered by the father to appellant, and the consideration was not in part for moneys advanced to the grantor by appellee. The answer denies that interest on encumbrances and all expenses of maintaining the property had been paid out of appellee's funds, and denies he has at all times been in possession of the property. The answer avers appellee was unable to pay the taxes on the property and allowed the same to accumulate and become delinquent to such an extent as to imperil the title, and that he requested appellant to redeem the property in order to save the same for the benefit of his wife, and that appellant at various times paid the delinquent taxes thereon and redeemed the property, paying out large sums of money because she understood the property belonged to her daughter. The answer denies the conveyances were executed without the knowledge or consent of appellee or that they were without consideration, and avers that they were made for the purpose of vesting the title in his wife, in accordance with the understanding concurred in and authorized by him after the execution of the power of attorney. The answer avers appellee was engaged in business and for a considerable time resided abroad with his wife, she making frequent visits to the United States; that appellant had charge of the premises on behalf of appellee's wife, attended to the payment of taxes and assessments levied against the property, and on numerous occasions, not having on hand sufficient

income from the property to pay the assessments, she paid out of her own funds various amounts for interest upon the mortgage on the property and for taxes and assessments, and if she had not done so the property would have been sold under foreclosure or for taxes and assessments; that in the year 1918 the mortgage on the property matured and was about to be foreclosed; that appellee and his wife were at that time in England, and they wrote appellant they would not pay the interest or cost of renewal of the mortgage or any further taxes on the property and would abandon the same rather than pay any more money on it, and thereafter appellant took counsel and was advised that it was worth saving from foreclosure sale or sale for delinquent taxes and assessments, and out of her own funds she renewed the mortgage of $6000, paid the commissions for renewal and all other expenses connected therewith and all delinquent taxes and assessments. The answer avers that appellee's wife was the owner of other improved real estate in Chicago, and that appellant had charge of this also for the wife, attending to the renting thereof, the collection of rents and payment of taxes, assessments and repairs; that the wife had title to this property for about twenty-five years, during all of which time appellant cared for it until 1923, when it was sold by the wife for $7250, and appellant never received any compensation for services in connection with the property and was never reimbursed for the moneys she advanced for appellee and his wife. The answer further avers that appellee was not successful in business, was extravagant, and indiscreet both in respect to his personal conduct and in the management of his business and constantly urged his wife to give him the money she received, and that his wife, in order to avoid controversy with him, gave him practically her entire income from every source, and upon the sale of the property in 1923 he persuaded her to turn over to him the entire proceeds of the sale upon the threat that he would be ruined if she

did not do so; that he also threatened at other times to commit suicide if she did not turn over her funds to him; that he and his wife frequently quarreled, because he for many years prior to the death of his wife sustained illicit relations with various women living in England and elsewhere, and he paid regularly to two of said women large sums of money for their support and for the support of the child of one of them; that in 1923 his wife refused to cohabit with him and early in the year 1924 came to this country, continuing to reside here; that later the same year he came from England to the United States and brought with him Stella Blackwell and her illegitimate child; that Stella Blackwell came to Chicago, and soon after her arrival the authorities of the United States government made an investigation of the conduct of appellee and Stella Blackwell and she and her child were deported by the government and returned to England; that his wife was advised by officers of the government that appellee had violated the Mann act and was likely to be prosecuted by the government, and that he was in danger not only of having a large fine imposed upon him but a prison sentence as well. The answer avers that shortly prior to the execution of the deed by appellant to Olive Morris and by Olive to appellee's wife, appellee entreated his wife to intercede with the officers and Department of Justice to abandon the complaint and prosecution of him, and promised his wife that if she would do so he would do anything she required of him and would make any settlement that she desired; that thereupon the wife requested appellant to make the deeds vesting title in the wife, and the deeds were executed; that afterwards appellee and his wife again quarreled on account of his infidelity, and he then pretended and stated that appellant had no authority to execute the deeds to the property vesting title in his wife; that he procured an attorney at law to demand of appellant that she take steps to re-invest him with the title to the property, and such demand was

made on appellant November 18, 1924; that she at that time had a conference with appellee and his wife, and he withdrew all objections to the conveyances and ratified the same and said he would instruct his attorney to make no further claim for a re-investment of the property, and that he did so instruct his attorney; that after such ratification by him of the conveyance of the property to his wife he permitted the title to remain in his wife and raised no question of the validity of the title until after her death and until the filing of his bill of complaint in October, 1927. The answer admits the making of the will by appellee's wife devising the property to appellant, and avers the wife was at her death the owner in fee simple of the property.

The cause was referred to a master in chancery to take the proof and report his conclusions. The master reported recommending a decree in accordance with the prayer of the bill. Objections to this report were overruled by the master and renewed as exceptions by appellant. They were overruled by the chancellor and a decree rendered as recommended by the master, from which decree appellant has prosecuted this appeal.

There is much contradiction in the testimony, which is nothing unusual in lawsuits between members of a family. Appellant's contention that the property was really the property of appellee's wife we do not think was sustained by the proof, although it was not very clear. That the wife was interested in the property and furnished appellee money at different times for his needs we think is sustained by the proof, although the extent to which this was done is not definitely established. The property here involved was conveyed to appellee by his father, and the consideration paid for it and who paid it is somewhat uncertain from the proof. Appellee does not allege in his bill upon what kind of a trust the property was held by his wife—whether a resulting or constructive trust. He merely alleges that it was upon a trust. A resulting trust arises through opera-

tion of law and a constructive trust is created by construction of the court. Parol evidence to sustain a resulting or constructive trust must be clear and satisfactory. *Strong* v. *Messinger,* 148 Ill. 431; *Mahoney* v. *Mahoney,* 65 id. 406; *Neagle* v. *McMullen,* 334 id. 168.

Appellant's contention that the court erred in not decreeing that appellee had ratified the transaction of making the deeds we think is sustained. A letter was introduced in evidence from appellee's Chicago attorney to appellant dated November 17, 1924. The letter stated in substance that appellee had placed in the attorney's hands for action and attention the question of the legality of a conveyance made by appellant under the power of attorney given her by appellee and his wife. The attorney stated he desired to bring about a reconveyance of the property without expense to his client and suggested that appellant get in touch with him at once; that if she did not do so an expense would be imposed upon her by filing a bill to remove the cloud. The letter stated the conveyance was made without consideration, and said if the attorney did not hear from her he would proceed with a court action to protect the interest of his client. Upon the receipt of the letter she showed it to appellee, who was then in Chicago and staying in the Kenmore avenue property with her, and asked him what he meant, and told him if he did not withdraw it at once she would go down and tell Bell, the attorney, just what kind of a man appellee was. Thereupon appellee said he would go down to Bell and "call it off." He then left the house, went to Bell's office, and when he returned told appellant, in the presence of Olive Morris, that he had "called it off." Bell later verified over the telephone appellee's statement to appellant. There was some contradiction of this conversation between appellant and appellee. Appellee was first of the impression that the title to the Kenmore avenue property was in Olive Morris, but admits that his wife told him Olive had conveyed it to her and

that the title was all right. He replied, "Well, that is a little better." From October, 1924, until June, 1927, (the date of the death of his wife,) substantially three years, appellee knew the title was in his wife and then agreed to abandon any effort to get title to himself and so instructed his attorney. No further move was made by him until after his wife's death and the filing of her will. The inference is warranted that it was the disposition made by the will which aroused him to action. As between principal and agent the conduct of the principal will be liberally interpreted in favor of ratification. 1 Mechem on Agency, secs. 480, 489; Lawson on Contracts, sec. 173; *Connett* v. *City of Chicago,* 114 Ill. 233; *Booth* v. *Wiley,* 102 id. 84; 28 Corpus Juris, sec. 44, p. 649.

The equities of the case do not appeal strongly in favor of appellee, and in view of the delay in bringing suit after he knew where the title was, we think he must be held to have ratified the transaction.

The decree will be reversed and the cause remanded, with directions to dismiss the bill.

*Reversed and remanded, with directions.*